**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| NAAVAH LLC,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | § | Case No. 4:26-cv-00899 |
| KRISTIN DODSON SMITH,<br>*Defendant*. | §<br>§<br>§ | |

**PLAINTIFF NAAVAH LLC'S ORIGINAL COMPLAINT**

Plaintiff Naavah LLC files this Original Complaint against Defendant Kristin Dodson Smith, and would respectfully show the Court as follows:

## I. INTRODUCTION

1. Kristin Dodson Smith portrays herself as a "wardrobe stylist" for celebrities and high-net-worth individuals. In reality, Smith uses that introduction to embed herself with high-profile clients and their companies with her design being to extract exorbitant payments to fuel an extravagant lifestyle. Once she is welcomed into their professional and personal lives, she manufactures complaints and makes inflated demands for compensation she was never promised and never earned. She has done exactly that to Naavah LLC and its founder, Ashleigh Pogue. Ms. Pogue and her husband are prominent North Texas business owners and philanthropists. Smith wove her way into their lives, as she has done with others, through misrepresentations about her intent to help them, all while she planned to demand vast sums and equity in their company to which she had no legal right. Naavah now brings this action to end that scheme, which preys on unsuspecting targets, ensnares them with lies, and threatens public harm unless Smith is paid.

2. Before Smith made her recent demands and threats against Naavah's founder, her husband's well-known Texas construction company, and its CFO, Naavah had considered Smith for a position promoting its Texas-based business operations. To start discussions of what that potential new business relationship would entail, Naavah sent Smith a term sheet. In early April 2026, Smith unequivocally rejected the offer and stated that she was unable to move forward. Notwithstanding the lack of any contractual relationship between the parties, Smith now demands more than $500,000 and, even more brazenly, 10% of the construction company (not Naavah) owned by Ms. Pogue's husband, without any basis. This was her plan from the start. Smith never intended to build Naavah's brand or to act as a fiduciary in its best interests, which the Chief Operating Officer position she claims to have accepted would have required. Instead, she sought to exploit the Pogues' generosity and influence, ingratiate herself with them, and collect inflated payments for minimal work, all under the pretense that she would work for them.

3. Smith's demands most recently came through counsel, in the form of a hastily assembled complaint filed in an improper venue. That filing is part of her threat to mire Naavah and Ms. Pogue in public litigation and to drag Ms. Pogue's husband's company and executives into her scheme without any basis. Rather than give in to these baseless demands, Naavah brings this action to confirm that no contract exists and to redress the harm Smith has caused.

4. Smith has traded on her association with Ms. Pogue—including by featuring Ms. Pogue in Smith's marketing materials and by creating a website and

email domain bearing Ms. Pogue's name—to promote her own styling business and, ultimately, to pressure Naavah and Ms. Pogue to pay her. Smith has refused to turn over ownership and login information for the website and email domains that she has used bearing Ms. Pogue's name under the guise of purportedly working for Naavah. Smith continues to hold the domain and Ms. Pogue's name and likeness hostage, apparently unless and until she pays Smith's ransom.

5. Smith cultivated her relationship with Ms. Pogue and Naavah over a period of years, posing as a close friend of the Pogues. Yet she now seeks to exploit that relationship. Despite the fact that Naavah and Smith never executed any written agreement, and despite Smith's own express rejection of Naavah's compensation offer, Smith has now sprung the trap she set. In doing so, Smith holds hostage Ms. Pogue and Naavah continuing to exercise dominion over Ms. Pogue's name, image, and likeness. She has refused repeated demands to relinquish that property. When Naavah and Ms. Pogue refused to capitulate to Smith's demands, Smith escalated her threats, including to Ms. Pogue's family's construction company.

6. Naavah hereby seeks declaratory relief that no employment or other compensation contract exists between it and Smith, and also seeks damages and other relief related to Smith's efforts to extract money to which she has no right, to withhold and misappropriate Naavah's property, and to interfere with Naavah's business.

## II. PARTIES

7. Plaintiff Naavah LLC is a limited liability company organized under the laws of the State of Texas with its principal place of business in Texas. Each of Naavah's members is a citizen of the State of Texas.

8. Defendant Kristin Dodson Smith is a resident and citizen of California, residing in Los Angeles, California. Upon information and belief, Smith may be served at 865 Comstock Ave, Unit 10b, Los Angeles, CA 90024 or wherever she may be found.

## III. JURISDICTION

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Naavah and Smith. Naavah and each of its members are all citizens of Texas, and Smith is a citizen of California. Additionally, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in this Court because a substantial part of the events giving rise to Naavah's claims occurred in this District, Naavah maintains its principal place of business in this District, and Defendant's conduct is directed at damaging Naavah's business interests in Collin County, Texas.

11. Smith is subject to jurisdiction in Texas because she has regularly directed her activities at Texas and the citizens of Texas, specifically those actions that give rise to this lawsuit were performed in or intentionally directed at Texas. For example, the work that Smith performed for Ms. Pogue was directly tied to Naavah's Texas-based business interests. Further, the demands and threats made by

Smith were directed at Ms. Pogue, Naavah, and others in Texas and were intended to pressure Naavah's Texas business, its founder, and related Texas business interests. She further regularly conducts business in Texas to such an extent that she is effectively at home in the State and therefore subject to jurisdiction in Texas.

## IV. FACTS

### A. Smith embeds herself with Naavah and Ms. Pogue.

12. Naavah is a Texas-based fashion and beauty brand founded by Ashleigh Pogue. Smith, by contrast, portrays herself to the public as a successful "celebrity stylist," routinely posting images of designer clothing, private travel, and exclusive industry events.

13. Since meeting the Pogues several years ago, Smith has strategically embedded herself into their lives and now preys on their generosity. After consulting with Ms. Pogue on clothing (given Ms. Pogue's prominence in the fashion and local community) for a couple of days per month based on representations that Smith was a legitimate clothing consultant without ulterior motives, Smith demanded more than $350,000 to expand beyond her then sparse role. Even then, Smith's proposal was to work a mere two days per week. Unsurprisingly, Naavah and Smith never reached agreement. Even so, Smith invoiced Naavah for more than $20,000 for work allegedly performed for Naavah, and Naavah paid her. Smith has not identified any unpaid invoice or entitlement to money from Naavah or Ms. Pogue, despite Smith's repeated demands for hundreds of thousands of dollars. Of course not—there is no outstanding amount owed to Smith, nor any agreement whatsoever that could entitle

her to hundreds of thousands of dollars for work she concedes she has not performed because such payment would relate to future work.

14. Beyond the payments received, Smith benefited substantially from her association with Ms. Pogue and Naavah, including through additional payments for styling and wardrobe consulting services, payment for travel, and other expenses. All of these benefits flowed from Smith's scheme: she posed as a stylist and friend, falsely promising to consider a full-time position, and she never intended to fulfill those promises. All this to extract vast sums from Naavah and its owner.

15. Indeed, Smith expressly rejected Naavah's offer. As discussed, by early April, she stated in writing that she was "unable to move forward," and her representative later confirmed in writing that Smith had "rejected" Naavah's offer. No meeting of the minds occurred, and no contract was formed.

**B. Smith's history of using threats to obtain money from wealthy individuals.**

16. The Pogues are not Smith's first targets. She previously sued former Dallas Cowboy Gerald Sensabaugh after their relationship ended. Upon information and belief, Mr. Sensabaugh was forced to settle that lawsuit for an undisclosed sum of money.

17. Smith also brought claims against another former boyfriend, Tiger Woods, after their breakup, outlandishly claiming he owed her money. As part of an overall ploy to leverage a sizeable payment from Mr. Woods, Smith also tried to invalidate a non-disclosure agreement she entered so that she could divulge confidential information to the public. After private legal proceedings, upon

information and belief, Smith agreed to accept an undisclosed payment from Mr. Woods to keep the scandal private.

18. These examples are just those that are public.

19. While the victims change, Smith's tactics remain shockingly consistent: embed and exploit.

### C. Smith manufactures a claim and threatens Naavah and Ms. Pogue to obtain money.

20. On or about May 18, 2026—after having rejected Naavah's offer—Smith, through her attorneys, sent Naavah and Ms. Pogue a demand letter baselessly asserting that a binding agreement existed and threatening litigation, "significant cost," and public disclosure unless she was paid. This demand was directed to Naavah, Ms. Pogue, and others in Texas.

21. The demand letter failed to identify the essential terms of any purported agreement, including the alleged parties, the compensation owed, the duration, or the amount supposedly due. Further, when Ms. Pogue requested through counsel that Smith substantiate her allegations and articulate an amount certain that she was owed and for what reasons, Smith provided nothing. Smith's inability to provide the factual bases for her assertions is unsurprising because she never entered into any agreement with Naavah. And any assertion to the contrary was contradicted by Smith herself, who expressly declined Naavah's offer and stated that she was "unable to move forward." In the face of these facts, Smith's post hoc attempt to manufacture a binding agreement fails out of hand.

22. Smith also created and continues to control a website using Ms. Pogue's name—ashleighpogue.com—and an associated email address, management@ashleighpogue.com, which she has used to impersonate and falsely associate herself with Ms. Pogue and Naavah. Despite repeated demands, Ms. Smith has refused to relinquish control of the website, domain, email, and other media she created or obtained during her limited engagement.

23. After Naavah made clear that Smith had no legal right to any payment, Smith raced to the courthouse and filed a hastily assembled, forum-shopping complaint in a California state court, which lacks jurisdiction, against Ms. Pogue individually, Naavah, the construction company and its CFO. That complaint is riddled with typos and omits multiple factual bases.

24. Despite the absence of any contractual relationship, Smith now attempts to harm Naavah and its business relationships unless she is paid sums exceeding $500,000 and given a 10% stake in a company with which she has no relationship.

25. In an effort to pressure Naavah, Smith and her counsel have sought to leverage Ms. Pogue's reputation and the value of the Naavah brand. Naavah and Ms. Pogue have refused to accede to Smith's demands.

26. Naavah now brings this action to establish that no contract exists, to recover money and property wrongfully obtained or withheld by Smith, and to protect its business and intellectual property.

## V. CAUSES OF ACTION

### A. Request for declaratory relief

27. Naavah incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

28. At various times, Smith has demanded money from Naavah based on an alleged contractual agreement with Naavah..

29. Naavah contests the existence and validity of any such contract. Alternatively, if any agreement ever existed it was clearly terminated and never gave Smith any right to further compensation much less equity in a construction company or any other company. Naavah accordingly asserts a claim for declaratory relief under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

30. Specifically, Naavah seeks a declaration by this Court that Smith has no legal right to payment from Naavah or its owners, much less any other companies alleged to be associated with Naavah.

### B. False association and misappropriation of intellectual property

31. Naavah incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

32. Naavah is a fashion and beauty brand founded by and built around Ashleigh Pogue. Ms. Pogue's name and the Naavah brand are valuable assets that Naavah uses in commerce.

33. During her limited engagement, Smith created and registered a website and domain using Ms. Pogue's name—ashleighpogue.com—which contains several

images of Ms. Pogues. Smith also used an associated email address—management@ashleighpogue.com. Despite repeated demands to return control of the website and email address, Smith has refused to do so.

34. Smith's continued exclusive control or use of the ashleighpogue.com domain, email address, and related media is likely to cause confusion as to Ms. Pogue's and Naavah's affiliation with, and sponsorship or approval of, Smith, and constitutes a false association with and misappropriation of Naavah's and Ms. Pogue's name, likeness, and other intellectual property..

35. Given the domain name and the content and images of the website, and the associated email address, Ms. Pogue and Naavah, her company, can easily be identified from the content, despite Smith's inappropriate operation and retention of the content. Smith has and continues to exclusively operate and access the website and email account to Smith's advantage and/or benefit.

36. As a proximate result of Smith's conduct, Naavah has suffered damages in an amount to be proven at trial, and Naavah is entitled to injunctive relief requiring Smith to relinquish control of the domain, email address, and related media.

**C. Civil Extortion and Unlawful Conversion (California and Texas Law)**

37. Smith seeks to wrongfully obtain money from Naavah with no legal basis.

38. Smith, through her counsel, sent a demand letter to Naavah and threatened public litigation and "significant cost" unless Naavah paid her sums to

which Smith has no legal claim. Indeed, she has now filed claims against individuals and entities from whom she does not even allege she is owed money.

39. Smith has sustained no injury and performed no work that would entitle her to more of Naavah's money, nor has Naavah committed any wrongful conduct toward Smith. To the contrary, Smith obtained payments and reimbursements from Naavah for services she never fully performed, which in equity must be returned.

40. Smith made such demands, and continues to withhold Naavah's property, with the specific intent to extort money from Naavah and to unlawfully convert Naavah's property, namely money and Naavah's intellectual property.

## VI. CONDITIONS PRECEDENT

41. All conditions precedent have been performed or have occurred. *See* Fed. R. Civ. P. 9(c).

## VII. JURY DEMAND

42. Naavah demands a trial by jury on all claims so triable.

## PRAYER

Accordingly, Plaintiff Naavah LLC respectfully requests that Defendant Kristin Dodson Smith be cited to answer and appear, and that upon final trial, Naavah have:

a. Judgment against Defendant for actual, special, consequential, and other damages, together with prejudgment interest, as provided by law;

b. A declaration that no employment or other compensation contract exists between Naavah and Ms. Smith;

c. An order requiring Defendant to relinquish and transfer to Naavah all control of the ashleighpogue.com domain, associated email accounts, and any websites, media, or other intellectual property created or obtained during Defendant's engagement, and to return all funds wrongfully obtained;

d. Postjudgment interest, as provided by law;

e. Costs of suit;

f. Reasonable and necessary attorneys' fees; and

g. Such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

By: _/s/ Edwin Buffmire_
Edwin Buffmire
State Bar No. 24078283
Cody Martinez
State Bar No. 24102146
Elizabeth Pittman
State Bar No. 24110823
**JACKSON WALKER LLP**
2323 Ross Avenue, Ste. 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 – Fax
Email: ebuffmire@jw.com
Email: cmartinez@jw.com
Email: epittman@jw.com